# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIE P. AMADOR,<br><br>    Petitioner,<br><br>    v.<br><br>JAMES D. HARTLEY, Warden,<br><br>    Respondent.                / | 1:10-CV-01059 OWW GSA HC<br><br>FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation following his conviction in Orange County Superior Court in 1993 of second degree murder with enhancement for use of a firearm. He is serving a sentence of nineteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its August 15, 2008, decision finding Petitioner unsuitable for parole. Petitioner contends the Board denied his due process rights when it arbitrarily denied parole based on the immutable facts of the commitment

---

[1] This information is taken from the pleadings and the state court documents attached to Respondent's answer, and are not subject to dispute.

1

offense. In addition, he claims the Board failed to articulate a nexus between the immutable offense facts and the determination of current dangerousness.

Petitioner filed a habeas petition challenging the Board's 2008 decision in the Orange County Superior Court on March 16, 2009. The petition was denied in a reasoned decision on April 7, 2009. Petitioner next filed a habeas petition in the California Court of Appeal, Fourth Appellate District, on July 21, 2009. The appellate court denied the petition on July 30, 2009. Petitioner then filed a habeas petition in the California Supreme Court on October 2, 2009. The petition was summarily denied on March 24, 2010.

Petitioner filed the instant federal petition for writ of habeas corpus on June 11, 2010. Respondent filed an answer to the petition on October 28, 2010. Petitioner filed a traverse on November 22, 2010.

## STATEMENT OF FACTS[2]

In October of 1992, Petitioner was visiting his ex-fiancée who had informed him that her clothing and other property had been taken when she was at a party. Petitioner agreed to go with her later that afternoon to help her retrieve her belongings. She drove them both to the house and attempted to get her belongings back from the victim and his friend. Petitioner stated that the victim and his friend were staring at him in a hostile manner and that the victim pulled out a knife and held it at his side.

Petitioner and his ex-fiancée left and went to a friend's house to see if he would help retrieve the clothes. Petitioner's friend was too busy to join them, but gave Petitioner a gun for his protection should he go back to the house. His ex-fiancée drove him back to the house and Petitioner went up to the door to retrieve the clothes. The victim and his friend came to the door. The victim pulled the knife again and threatened him. The victim started to come at Petitioner. Petitioner got scared, pulled out his gun, and fired twice. The victim's friend closed the door, and Petitioner ran back to the car. Petitioner knew the shots had struck the victim but he stated he did not know the severity of the injuries. He states he did not call the police out of fear. He

---

[2] This information is taken from the summary of the crime set forth in the psychological evaluation dated August 26, 2005, that is contained in the documents lodged by Respondent.

2

then returned the gun to his friend who said he would get rid of the gun.

## DISCUSSION

I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging his underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its

independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme.  Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of

treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>> (C) The victim was abused, defiled or mutilated during or after the offense.
>> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

> (1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
> (2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
> (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
> (4) Motivation for Crime. The prisoner committed his crime as a result of significant

5

   stress in his life, especially if the stress has built over a long period of time.

   (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

   (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

   (7) Age.  The prisoner's present age reduces the probability of recidivism.

   (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

   (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

   The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

   Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

   The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the

1  circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

A.   State Court Decision

The superior court provided the last reasoned decision, rejecting Petitioner's claim as follows:

> '[W]hen a court reviews a decision of the [BPH] or the Governor, the relevant inquiry is whether some evidence supports the decision of the [BPH] or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.' (*In re Lawrence* (2008) 44 Cal.4th 1181, 1212.) '[T]he focus upon current dangerousness is the appropriate articulation of the 'some evidence' standard . . . [and] the relevant consideration . . . is the core statutory determination of public safety.' (*Ibid*.; see also Pen. Code, § 3041, subd. (b).) Thus, where 'the evidence of the inmate's rehabilitation and suitability for parole under the governing statutes and regulations is overwhelming, the only evidence related to unsuitability is the gravity of the commitment offense, and that offense is both temporally remote and mitigated by circumstances indicating the conduct is unlikely to recur, the immutable circumstance that the commitment offense involved the aggravated conduct does not provide 'some evidence' inevitably supporting the ultimate decision that the inmate remains a threat to public safety.' (*In re Lawrence, supra*, at p. 1191, emphasis in original.)

7

1  In other words, to prevail on the argument that the BPH violated due process by its parole denial, Petitioner would have to show (1) that evidence of his rehabilitation and suitability for parole is 'overwhelming,' and (2) that the 'only evidence' of unsuitability is the gravity of the commitment offense itself. (*In re Lawrence, supra*, at p. 1191.) Petitioner fails to do so. The petition does not demonstrate that the gravity of the commitment offense was the 'only evidence' of unsuitability.

The BPH also noted Petitioner had 10 counseling chronos. While the BPH would not use these 128's as reasons to deny parole, it did indicate that they were numerous and two were incurred <u>after</u> Petitioner's last parole hearing. Petitioner also had three 115's, including one incurred as recently as 2000. Petitioner points out his 115's were not incurred for violent behavior. The most recent, however, was incurred for manufacturing alcohol, which certainly does not speak well of Petitioner's ability to use good judgment or to avoid problem situations. Finally, the BPH wanted Petitioner's letters of support on parole (such as offers of housing and employment) to be dated and signed and mailed directly to prison authorities from outside the prison. This was not an unreasonable request.

A BPH parole decision is subject to a <u>limited</u> judicial review. (*In re Lawrence, supra*, 44 Cal.4th at p. 1212; see also *In re Dannenberg* (2005) 34 Cal.4th 1061; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 626; *In re Powell* (1998) 45 Cal.3d 894, 902-904; *In re Van Houten* (2004) 116 Cal.App.4th 339, 347.) The burden is on a habeas petitioner to demonstrate that the BPH abused its discretion by denying parole. Petitioner fails to do so here.

The BPH cited reasons for its parole denial, aside from the commitment offense, which were supported by the record. Petitioner therefore does not demonstrate that evidence of his rehabilitation and suitability for parole is 'overwhelming,' or that the 'only evidence' of his unsuitability is the gravity of the commitment offense itself. (*In re Lawrence, supra*, at p. 1191.) Petitioner therefore fails to show that his due process rights were not violated by the BPH decision. The petition is denied on that basis.

(<u>See</u> Resp't's Answer Ex. 2.)

In this case, the state court first found that some evidence supported the finding that the commitment offense was carried out in an especially heinous, atrocious or cruel manner. The Board had determined that the commitment offense was carried out in a manner which demonstrated an exceptionally callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(D). In reviewing the facts of the case, this Court finds no evidence to support this finding. The victim was shot twice in the neck. Petitioner did not prolong the victim's suffering, torture the victim, or do anything that would merit a finding of exceptional callous disregard for human suffering. Therefore, this factor is unsupported. However, the Board also determined that the motive for the crime was very trivial in relation to the offense. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E). The record shows Petitioner shot the victim in order to assist his girlfriend in retrieving some clothes. Such a motive is very trivial in relation to

the offense of murder. Thus, some evidence supports this factor. Accordingly, the state court determination that some evidence supported the Board's finding that the offense was committed in an especially heinous, atrocious, or cruel manner was not objectively unreasonable.

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, the Board did not rely on the commitment offense alone.

The Board also noted that Petitioner had committed serious misconduct in prison. Cal. Code Regs., tit. 15, § 2402, subd. (c)(6). In three instances Petitioner received "CDC-115" serious rules violation reports for serious misconduct, the most recent occurring in 2000. While it is true that the violations were not for violent behavior, the statute does not require the instance of misconduct be violent to qualify. In addition, they do indicate a serious failure to abide by the rules in place. This constitutes some evidence to support this factor of unsuitability. Petitioner also had sustained ten "CDC-128" counseling chronos. Although the counseling chronos were not relied upon individually as reasons to deny parole, the Board noted that the number of chronos demonstrate a pattern of misbehavior. In addition, two of the counseling chronos occurred after Petitioner's most recent parole hearing, lending more weight to the Board's finding that Petitioner was not exhibiting an ability to comply with rules and regulations. Therefore, the state court determination that some evidence supported the Board's finding that Petitioner's commission of serious misconduct in prison indicated unsuitability was not objectively unreasonable.

The Board also considered the positive factors indicating suitability for parole. Petitioner had a stable social history and no prior criminal history; his psychological evaluation was favorable; his parole plans were viable and realistic; his participation in self-help activities and programming was outstanding; and his vocational endeavors were substantial. The Board did

note that some support letters Petitioner received were unsigned and undated; therefore, they could not be completely relied upon.  Petitioner was advised to have all of his support letters sent directly to the Board to avoid any suggestion that they might be counterfeit.  In any case, after considering the many factors in favor of suitability, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability.  The Board determined that the circumstances of Petitioner's commitment offense and his demonstrated failure to comply with the rules in prison were more probative of a danger to the public should he be released.  The state courts' determination that there was some evidence to support the Board's 2008 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record.  Accordingly, federal habeas corpus relief is unavailable.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 23, 2010**              /s/ **Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE